All right, our third case for this morning is United States v. Keith Offord. Mr. Melitza. Thank you, Your Honors, and may it please the Court, Ms. Boyle. In this case, Mr. Offord's stop in August of 2015 was unreasonably delayed. I don't want to belabor the facts of the case, which were laid out very thoroughly in the transcript of the suppression hearing, but essentially, Officer Parmley did everything he could to avoid pursuing the traffic mission. But, you know, what I need you to talk about is this. This was not a car in which Mr. Offord was sitting by himself. There's a passenger. So the police officer, in a sense, is processing both people at the same time. And when he finds out that the passenger has no identification with her, he brings her back to the squad car and has to take a few minutes. She's cooperative. You know, she tells him her name. He pulls her up, figures out that she's got the active a more serious stop than just somebody going 85 in a 70 zone. And so I want you to tell me how these cases relate to a situation where there are really two people of interest very early on into the stop. The driver, who was speeding, and the passenger, who it turns out has an active warrant that he might have the authority, if he has to figure out the saying that he was not allowed to pursue the warrant for Ms. Howay. That took up some time, but that's not the delay we're talking about. So, but if you allow him to do that, we shave off quite a bit of the time that you're concerned with. If you watch that video, which I did, the only thing about the video that I was amused by was the thought that this was a deserted road because you could barely hear the video of the traffic zooming by on Interstate 55. But there's not very much time. Right. And the question of a de minimis delay was the very circuit split that Rodriguez itself was resolving when it was decided by the Supreme Court in 2015. In this case, there's very little delay necessary to make it unreasonable because Officer Parmalee had all of the information he needed from the very start. So when the officer finds out that Ms. Howay has the active warrant on a charge of drugs, basically, doesn't that create a little bit of reasonable suspicion that maybe he's involved with that, too? Well, the warrant didn't suggest that she had any ongoing drug activity, and a little bit of suspicion doesn't make it reasonable suspicion. In fact, Officer Parmalee, who is, I believe, been a trooper for over 10 years, told the court under oath that he had no suspicion that Mr. Offord was involved in it. And that kind of gets us to... I mean, you concede it's an objective test, right? I do concede it's an objective test, and I think that the district court either misapplied that law or basically set the bar too low in what becomes objectively suspicious. If the district court is correct, I would argue that this case wrongly decided Rodriguez-Escalera. In one of my briefs, I set the circumstances side by side, and that case was, at least on my reading, and I think clearly more suspicious-looking than Mr. Offord. So I do agree it's an objective test, but I think that one of the missteps that the district court took was holding that Officer Parmalee's opinion that there was nothing suspicious here with Mr. Offord was of no matter. The cases both from here and from the Supreme Court are clear that an officer's training and experience are to be given their due consideration as part of that totality of the circumstances test. So you're just saying that's part of the evidence that would go to the ascertainment, whether there was something objectively wrong? Yes, and I'm saying it would be a rather powerful one, given the fact that he is ostensibly a neutral assessor of it, and especially once one considers Paniagua-Garcia and Flores, starting to think of how many drivers would be subject to being stopped and detained, it becomes rather clear. Mr. Melendez, if you think about the video, right, I mean you've seen the video many times. At what point do you think that there is prolonged delay that begins? After he sets Ms. Ho way in the car, she's in handcuffs, he has decided without question he's going to arrest her. He goes up to Mr. Offord's window, he says, you know, I'm going to arrest her here. There's a little bit of small talk. He makes absolutely no question about whether or not his license has a current address. So that's about at the nine minute mark. Yes. Is that when he says, I've also got to check out the bonding issue? Exactly, but he, well no, no. He says hang out? Yeah, it's when he says, go ahead, just hang out for us. Right, hang out, I think because there's some other things he's got to do, including he's got to check the bond issue, he's got to write the ticket. But checking the bond issue for Ms. Ho way, who was already going to be arrested, was That had nothing to do with the traffic. There was no need to do that at that time. So you're objecting to the order in which he did things, rather than checking out the bond. You think he should immediately then have written the ticket so that that part of the stop could end and then he could focus on Ms. Ho way? Well, yes, and part of that is because I believe it was the Sixth Circuit who had held that a crafty officer can rearrange the order of what they're doing. The other thing he's got going on here is he's got colleagues that are showing up, right? He's got a backup car and he's got the K-9 fella shows up too. Yeah, he asked for the K-9, I think at about minute five of the encounter. Right, so my point with that is when they get there, you know, it's reasonable, I think, for him to give them a quick rundown on what's going on. Well, he wasn't, I mean, that's again, that kind of gets to the order. He's choosing to interact with these officers on this non-traffic related issue instead of going back to Mr. Oford and saying, well, is this license current? Well, that's why I asked you about the fact that there are multiple people here, which is a complication that I don't see in Rodriguez. He's, until Officer Jefferson and whoever the dog officer is, Cleveland, I guess, shows up, he's managing the whole thing and he's there on the left shoulder of the highway trying to make sure that he's, you know, having contact with Oford, with Howey, with, you know, just kind of getting this all done, and I just don't know where a compelled order of dealing with this, at least within this time frame, comes up. Well, there are two issues there. One, I agree with you that there is real tension in the cases, and even the Yancy case that was the subject of the 28J letter says you can do non-traffic things, but Rodriguez and the traffic mission. And Judge Scudder, I would go back to the question of when he started creating unreasonable delay. He did ask Ms. Howey four or five times the same set of questions, all of which related directly to, you know, where are you coming from? What were you doing? So I would say that the unreasonable delay was kind of baked into the middle of it and woven through the process. I'll tell you what I thought you might say. I thought you might say the delay occurred when he was sitting in the car with her after she was handcuffed, I believe, and when he was talking about, well, there's going to be a K-9 come. I've got to wait for the K-9, and then I'm going to circle the K-9 around the car. I thought that's when you would say, at that moment, there's some delay that's setting in. Yeah. As I say, I think it's kind of baked into the whole process. And to say that the delay started here or here or this specific moment puts too fine a point on it. And if you kind of zoom out and say, well, are you following the traffic mission? And unless you'd like to... You may save, unless you've got further questions. All right. Ms. Boyle. May it please the Court. Counsel, my name is Catherine Boyle on behalf of the United States. Judge Wood, as you aptly pointed out, this became a more serious stop at the point Ms. Holloway entered Officer Parmley's car and he learned that she had an outstanding warrant. In light of this warrant issue, along with the need to issue Mr. Oford a speeding ticket, the district court correctly held that the traffic stop of Mr. Oford was not unreasonably prolonged. So why isn't under the, at least the spirit of the Rodriguez opinion, why shouldn't he, once he had her secured in the squad car, let's say once he's got the handcuffs on her, I'll give you that long, why wasn't it his responsibility to just go back? At this point, he says he still has no reason to think that there's anything wrong with Mr. Oford and tell him he can drive on. I mean, how long could it take him? He's got the driver's license. He can't possibly take that long to write out a speeding ticket. Well, Your Honor, we don't think that Officer Parmley was obligated here to deal with the speeding ticket before he had finished dealing with some of the issues related to the warrant, which, as was pointed out earlier, would include this bond issue. It would also include the fact that Ms. Holloway still had luggage in the car, in Mr. Oford's car, so there are a number of issues that still need to be settled regarding Ms. Holloway and we don't think... So is it your position that by the time she's sitting there in the car in handcuffs that he has at least reasonable suspicion to think that there are drugs in the car? Yes, Your Honor. Based on the fact that she had an outstanding warrant? Well, she has an outstanding warrant for dangerous drugs. Initially, when Officer Parmley first pulled them over, even though, as Your Honor's heard from the video, they're on a very loud freeway, a window's open, there's flashing lights, there's an officer coming up to the car, the car's had a sudden stop in motion, she's still sleeping or fainting sleep, right away when Mr. Oford gives his... But wait a minute, she's tired. I mean, there's a shot in the video when it goes back to her in the car and she's in the middle of a gigantic yawn and then at some point she puts her head over on the side. I mean, I don't think there's any doubt that she was sleeping. Well, and additionally, I think suspicion increases at the point where Mr. Oford offers his Chicago identification, but when Ms. Helway is asked for her identification, Mr. Oford immediately jumps in and speaks for her and says she doesn't have any, despite the fact that she's recently been crossing state lines. Why would you, why does the government think that's a big deal? She's not driving. It's unusual, I would say, to go to another state without any form of identification. Are you kidding? Particularly where you're staying there for four days. Why? I mean, we don't have a papers please society. We don't have it yet. Well, and besides which, maybe he knew about the outstanding warrant. I mean, that doesn't give reasonable suspicion that there are drugs in the car. Maybe he didn't want her to give the identification so that she didn't get busted for that. Maybe he was trying to help. But still in all, the fact that she was sleeping, was it like 1230 at night? It was just before midnight and then extended past midnight, Your Honor. Yeah, I guess I don't think those things, nor do I think driving the rental car was particularly suspicious. Well, Your Honor, we're not saying that these things taken individually created reasonable suspicion. We're looking at it under the totality of the circumstances. We understand that. But actually, a favor I could ask the government is if you would just stop saying that one of the items leading to suspicion is that you're on a highway known for drug trafficking. I lived for several years in Houston, less than a mile away from Interstate 10. And I promise you, Interstate 10, which extends from Florida all the way over to San Diego, has its share of drug trafficking. But it goes through all sorts of cities. Houston's the fourth or third largest city in the country. And, I mean, the proportion of drug traffickers compared to the rest of the population traveling these roads is minuscule. It's not a suspicious factor. I would say the same thing of I-55 or I-57 or the Kennedy or whatever. Do you think your stronger argument is reasonable suspicion or simply that he didn't unreasonably prolong the stop? Your Honor, I actually think both arguments are strong here. I think it's very clear, and as the district court found, Officer Parmley was diligently performing tasks related to the traffic stop, related to the issuing of the traffic ticket and the outstanding warrant. And I think, as Judge Scudder pointed out, it was perfectly reasonable when these backup officers arrived for Officer Parmley to provide them with some additional information. You don't think he was just dragging it out so the dog would have time to get there? Of course, the minute the dog's there, it alerts. The whole thing changes. I don't, Your Honor. And, you know, I know there was some citations to Rodriguez for that. And Rodriguez is a very different scenario.  The officer actually issues the ticket. And after issuing the ticket, has the driver of the car wait for, I think it was a total of 22 minutes, on the side of the road for the dog to show up. That is not what is going on here. What about the defendant's argument that there's an obligation of ordering here, that he should have put Ms. Howey aside, and he could have waited to process that, but that he was obligated to move the traffic stop along and write the ticket? I don't believe that there is an obligation for the officer to address the ticket before they address the warrant. You know, the officer, during the stop, Mr. Alford actually asked the officer questions regarding Ms. Howey's warrant, and Officer Parmley informed Mr. Alford that he was going to let him know about bond information. He also told Ms. Howey during the stop, I'm going to figure out what your bond is. And at that point, in Officer Parmley's mind, he's still thinking that there's a possibility that Mr. Alford is going to want to post Ms. Howey's bond so that they can leave together. So I think that one of the reasons he's trying to figure out this warrant issue first is so he knows the landscape of what's going on here. Is this somebody who's leaving with Mr. Alford? Additionally, given the fact that this was a warrant for dangerous drugs, she was flagged as armed and dangerous, it probably seemed like a priority. You have an officer who is alone on a highway with two individuals late at night waiting for backup, and he's trying to figure out exactly what's going on. This court has noted multiple times that this is one of the most vulnerable positions an officer can be in during a traffic stop. One thing I took away from the video, Ms. Boyle, is I was really surprised that all this went down in 13 or 14 minutes. There's quite a lot happened in that amount of time when you add the complexity, as Judge Wood is pointing out, of not just a passenger, but then dealing with this whole warrant situation that arose with the passenger that the officer wasn't expecting. And if you just think about your common life experience, all this happening in 13 or 14 minutes is a pretty remarkably short duration of time. It'd be short for just getting a speeding ticket. I agree. I agree, Your Honor. I think particularly where you have the officer within this 13 or 14 minute of time pulling somebody over for speeding, explaining what's going on, checking criminal history, getting identification information, which he hadn't had previously from Ms. Holloway, finding out that there's a warrant, attempting to figure out the geographical limitations on the warrant, being alerted for backup, calling for a K-9 unit, informing the K-9 unit, and informing the backup officer who arrived what was going on, letting Ms. Holloway and Mr. Alford know what was going on with the bond situation, finding out that Ms. Holloway had luggage in the car, which at that point he knows he's going to need to deal with. And at the same time, he's also, I don't want to forget, he's still observing that there's a large number of iPhones, there's a large amount of expensive merchandise. But he says nothing about that. I mean, this isn't one of those cases where the officer says, the minute I looked into the car, I saw a problem, whether the problem is the smell of drugs or whether the problem is a gun in sight or whether the problem is lots of merchandise in the back seat. He doesn't say that. So why should we rely on that fact? Well, Your Honor, during the suppression hearing, he does say that he twice looked during the course of the stop into the back seat and noted this amount of merchandise. So I think that that is something he was looking at. But I think naturally also it was just one factor. You know, he looked and he thought that's unusual. Usually people don't have a number of brand new iPhones piled on the back of their car. Normally they, you know. But again, it was just one factor, but he did note that during the suppression hearing.  The alert just turned out to be this residue in Howie's purse. I believe she stated there would be drug paraphernalia in her purse, and they found something associated with heroin in her purse. Yeah, I thought it was just a residue. Yes, and then they also found that there were receipts in the car charged to Pete that were. . . Oh, once they're searching the car. Identity theft and. . . Yes, exactly. And the time we're focusing on really is the time between the stop and when the dog alerts, or perhaps even the time between when he's got Howie in cuffs and when the dog alerts, which, as I said a few minutes ago, is actually not that long. It's about seven, eight minutes. And there are other factors he noticed, too. He looked at the age gap. He thought that their stories were inconsistent. That annoyed me, actually, looking at the age gap. Maybe he's an older woman. The thought that maybe I could be in a car with Judge Scudder and people wouldn't think that it was the end of the world. Your Honor, I understand how that factor alone could. . . As a female attorney, I also agree with you. Thank you, Your Honor. If you have no further questions, we'll rest on the arguments in our brief. Thank you. Thank you. Thank you very much. Anything further? Mr. Melisa. Thank you, Your Honor. Just briefly, to the point of how quickly this stop was resolved, part of the reason it was so quick is because Mr. Offord and Ms. Holloway were so compliant. And as we all know, that speeds along and makes police interactions much easier. And that also added to why Trooper Parmley had no suspicion of Mr. Offord. In sum, Rodriguez is very easy to get around. An officer really just has to mix up the order of things. Well, maybe the Supreme Court meant for it to be a carefully limited ruling, subject maybe to further development. Perhaps, but they didn't necessarily write it that way. And they wrote it in a way that said, do not delay. Thank you, Your Honor. We rest in our briefs. All right. Thank you very much. And yes, thank you very much for your help.